IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 5:24-CR-00436-G-1 |
| v. | |
| MARIELLE TRAMANIE SMITH, | |
| ET AL | |

**REDACTED CONSOLIDATED MOTION AND
BRIEF TO COMPEL DISCLOSURE OF
EVIDENCE PURSUANT TO RULE 16 AND *BRADY***

COMES NOW the defendant Marielle Smith, by and through counsel, moves this Court for an order compelling the government to produce certain evidence and information to the defense in accordance with its duties and responsibilities pursuant to Rule 16 as well as the holding of the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. Defense counsel hereby certifies pursuant to LCrR16.2 that they have conferred with opposing counsel in good faith and have been unable to resolve the disputes enumerated herein concerning the proper scope of discovery. This motion is predicated on Mr. Smith's constitutional rights to due process and a fair trial in connection with the above-captioned indictment.

This motion is being filed in redacted form based upon considerations previously raised by the government and addressed in Mr. Smith's pending motion to seal [Doc. 633] and also in view of the impending trial date and the exigencies of the matters addressed herein. Should the motion to seal ultimately be granted by this court, the instant motion will be filed in unredacted form under seal as approved by the court; should the motion to seal be denied, the instant motion will be filed in unredacted form on the public docket. Undersigned counsel has been authorized to convey to the court that the government does not oppose the previously-filed motion to seal.

In support of this motion, counsel states as follows:

After having consulted productively on multiple occasions with opposing counsel (including numerous trips to review material in-person at the United States Attorney's Office), defense counsel delivered a formal discovery demand to the government via electronic delivery on May 1, 2026, concerning the production of requested and disputed materials in this case. [Exhibit A] The government responded to this discovery demand on May 19. [Exhibit B] On May 20, the defense submitted a second formal discovery demand. [Exhibit C] The government responded on June 2.

[Exhibit D] On June 10, defense counsel submitted certain further requests by email. [Exhibit E] And on June 12, defense counsel and the prosecutors handling this matter conferred by phone for approximately an hour and a half in an attempt to clarify and resolve remaining matters. This pleading represents undersigned counsel's best efforts to isolate and enumerate all areas that remain in dispute.

It is important to note that agreements and compromises have been reached by the parties in many areas, and that these agreements and compromises have been the product of diligent work and good faith on the part of all counsel involved. That said, the defense maintains that the government is currently in either direct or constructive possession of a substantial number of reports, recordings, and other "data" generated in connection with this investigation that are material to the preparation of the defense, exculpatory in nature, or both, and that have been strategically withheld from the defense based on a variety of justifications in violation of Mr. Smith's constitutional rights to a fair trial and due process of law.

## LEGAL FRAMEWORK AND BASIS

Rule 16 requires production, "[u]pon a defendant's request" of "documents… within the government's possession" that are "material to preparing the defense." FRCRP 16(a)(1)(E)(i). The only exception pertinent for present purposes noted in the rule is for "discovery or inspection of statements made by prospective government witnesses… as provided in 18 U.S.C. § 3500." In other words, under the plain terms of Rule 16, any documents or data *within the government's possession* that is material to preparing the defense should be disclosed upon request, unless that document reflects a statement made by a witness the government intends to call at trial, in which case its disclosure is generally governed by 18 U.S.C. § 3500 and the deadlines established therefor by the trial court.

*Brady v. Maryland*, of course, firmly establishes the government's duty to disclose to the defense all evidence within its actual or constructive possession that is of exculpatory value. *See e.g. Fontenot v. Crow*, 4 F.4th 982, 1061 (10th Cir. 2021) (quoting the *Brady* Court's central holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or

4

bad faith of the prosecution"). The Tenth Circuit has affirmed the prudent principle that "given the prosecutor's unique role in our criminal justice system, he must resolve close cases and doubtful questions in favor of disclosure." *Banks v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995) (cleaned up).

Importantly, the majority – though not all - of evidence sought by this motion is currently within the trial prosecutors' actual file, a fact that would surely render the withholding here more problematic for appellate purposes in the event of a conviction. That said, it has been firmly and repeatedly established "that Evidence suppressed by the state includes '*evidence known only to police investigators and not to the prosecutor*.'" *Fontenot v. Crow*, *supra*., 4 F.4th at 1062 (quoting *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)) (emphasis in the original).

It also bears mention in connection with the sheer quantity and diversity of information at issue here (again, most of which is indisputably in the direct, physical possession of the prosecution and can be obtained with a simple keystroke) that courts of review "do not consider each piece of withheld evidence in isolation. Rather, [they] review the cumulative impact of the withheld evidence; its utility to the defense as well as its

potentially damaging impact on the prosecution's case." *Banks, supra.*, 54 F.3d at 1518. For these reasons, the prosecution's decision to conceal evidence that is clearly material to the preparation of Mr. Smith's defense and that also carries significant exculpatory potential creates an unjustifiable and reckless risk to the ultimate validity of any conviction that may result from these proceedings. No justification for withholding this evidence has yet been articulated by the government that would be sufficiently weighty to counterbalance this risk.

## WITHHELD EVIDENCE

The evidence withheld by the government in this case can usefully be organized into several occasionally overlapping categories and subcategories:

**[1] Witness statements**

> **[a] Law enforcement interviews of witnesses the government does not intend to call at trial;**
>
> **[b] Rule 11 proffer sessions or grand jury testimony of witnesses the government does not intend to call at trial;**
>
> **[c] Law enforcement interviews of witnesses the government intends to call at trial;**
>
> **[d] Rule 11 proffer sessions or grand jury testimony of witnesses the government**

**intends to call at trial;**

**[2] The identity of certain "confidential" sources of information material to the investigation of this matter and to the defense;**

**[3] Evidence that would otherwise undermine the believability of the government's evidence against Mr. Smith at trial.**

These categories are discussed in sequential order in the paragraphs below in the interest of simplifying the Court's evaluation of the issues that remain in controversy between the parties.

### 1[a]

With respect to law enforcement interviews of witnesses the government does not intend to call at trial, the government has not articulated a clear principle explaining why some interviews have been disclosed and others will not. As of June 15, the government has offered to make these recordings available for review but has refused to produce them. The defense position is that the timely production of these statements and interviews is required by Rule 16 and, in many cases, by *Brady* as well.

Based on the government's representations, no audio or video recording of post-arrest contact or interviews exists as to the following

witnesses: ██████ (arrested 10/19/23), ████████████ (arrested on 2/23/23), ████████, and ████████████ (arrested on 7/19/23). At controversy then, at a minimum, are the withheld post-arrest interviews of the following witnesses who provided recorded interviews to law enforcement:

████████████ (arrested and interviewed on 5/20/24)

████████████ (arrested and interviewed on 5/20/24)

████████████ (arrested and interviewed on 2/16/24)

████████████ (arrested and interviewed on 2/16/24)

████████████ (arrested and interviewed on 10/2/23)

████████████ (arrested and interviewed on 9/16/23)

████████████ (arrested and interviewed on 10/16/24)[1]

████████████ (arrested and interviewed on 6/13/23)[2]

████████████[3] (arrested and interviewed on 12/19/23)

---

[1] The government maintains that no substantive information was conveyed in ████████ post-arrest interview with law enforcement. As such, it is especially difficult to understand the justification for not disclosing it.

[2] The government likewise maintains that no substantive information was conveyed in ████████ post-arrest interview. As such, it is especially difficult to understand the justification for not disclosing it.

[3] Particularly troubling is the government's refusal to produce the statements made by ████████, ████████████, and ████████ to

████████████ (arrested and interviewed on 10/27/23)

████████ (arrested and interviewed on 10/20/23)

The identities of all of these witnesses and co-defendants are plainly known to the defense, and yet the government inexplicably refuses to disclose the recorded statements they provided to law enforcement *in connection with this investigation*. The accounts provided by these witnesses clearly bear on the operation and organization of what the government has termed the "Smith DTO" and informs the DEA's understanding of the structure of the transactions attributed to it. These will be critical issues at trial and the withholding of the requested recordings will undermine Mr. Smith's constitutional rights under the Sixth Amendment to confront the

---

the lead DEA agent in this investigation law on the grounds that these statements concerned the ███ DTO (and, incidentally, presumably never mentioned Mr. Smith), which the government now asserts is largely unrelated to Mr. Smith and hence "not relevant" to these proceedings. However, on January 16, 2026, the government filed a Rule 404(b) Notice announcing its intent to introduce evidence at trial arguably relating to other crimes or wrongful acts committed by Mr. Smith for the purposes of proving intent, preparation, plan, knowledge, motive, and absence of mistake or accident. In this notice, the government described the ███ DTO as intrinsic to and *res gestae* of the alleged conspiracy, and highly relevant to ultimate questions of intent and knowledge. The government's stance on production contradicts its Rule 404(b) Notice from only a few months prior and is further proof the court should not blindly defer to the fluctuating opinions of the government.

evidence and witnesses called against him at trial for reasons that should largely be obvious but can be fully unpacked and articulated in an appropriate *ex parte* setting. Because the identity of these individuals, as well as the fact that they the spoke with investigators, is already known to the defense, releasing the recordings would raise no incremental concerns for their well-being. Because, according to the government, these individuals will not be called as prosecution witnesses at trial, the Jencks act does not apply to frustrate early disclosure of their statements.

Based on information and belief, many, if not all, of these statements will have exculpatory value to the defense insofar as the characterizations of criminal activity they contain (as well as the roles played by various alleged participants) are either internally inconsistent, inconsistent with statements the witness made elsewhere, or inconsistent with the characterizations of other witnesses interviewed by the law enforcement or by the defense. This will especially be so based on the legal theory of defense in this case, which can be disclosed to the Court in an *ex parte* hearing. Without having reviewed the statements, it would be unreasonable to expect Mr. Smith to further specify the exculpatory nature of their contents.

For the foregoing reasons and any other reasons that may appear to the Court upon a full hearing on this motion, Mr. Smith respectfully requests that the Court order the recorded statements and any other memorialization of these statements be produced immediately for the defense for use at the upcoming trial in this matter.

## 1[b]

Rule 11 proffer sessions or grand jury testimony (or both) exist as to the following witnesses who will not testify at trial according to the government:



[4]

Any formal or informal documentation reflecting the substance of the Rule 11 proffers of these witnesses as well as their testimony before the

---

[4] It should be noted that the government disclosed on June 12, 2026, that ▮▮▮▮▮▮▮ merely *could possibly* be called as a witness against Mr. Smith at trial. Conversely, undersigned counsel had previously been informed by counsel for former co-defendant ▮▮▮▮▮▮ that ▮▮▮▮▮▮ would be testifying ▮▮▮▮▮ behalf, and not for the government.

grand jury weighing charges against Mr. Smith are within the possession of the prosecution and are material to the preparation of his defense. Because these witnesses will not testify at trial, the Jencks Act presents no impediment to disclosure. More importantly, the constitution compels production of this evidence insofar as the "information" provided by these witnesses to investigators and prosecutors is material to the preparation of the defense under Rule 16 and would be expected to have exculpatory value for the defense pursuant to *Brady*. And yet the government has asserted that it will never, at any time, produce the testimonial statements of these witnesses to the defense absent an order compelling it to do so.

For the reasons discussed above, Mr. Smith respectfully requests an order requiring the production of these statements. In the alternative, Mr. Smith requests that these statements be reviewed by the Court *in camera* to determine whether they are material to the preparation of the defense under Rule 16 or exculpatory pursuant to Brady after having heard an *ex parte* proffer from the Defense. In the event that the Court declines to order their production, Mr. Smith requests that they be sealed and made a part of the record of these proceedings for appellate purposes.

## 1[c]

With respect to witnesses expected to testify at trial, the issue of disclosure is admittedly complicated by application of the Jencks Act, 18 U.S.C. § 3500. The question in controversy before the Court is accordingly focused on timing as to this set of witnesses. The government, in other words, has agreed that it is obligated to provide statements made by these witnesses to the defense but only pursuant to the Jencks Act and the terms of this Court's pretrial order.

The following witnesses expected to testify at trial provided recorded interviews to law enforcement after their arrests:



███████████ (arrested and interviewed on 9/16/23)

███████████ (arrested and interviewed on 5/24/24)

█████████████ (arrested and interviewed on 4/21/23)

█████████████ (arrested and interviewed on 2/16/24)

███████████ (arrested and interviewed on 11/14/23)

The intersectionality of Rule 16, the *Brady* doctrine, and the Jencks Act has been explored by several federal trial courts:

> At least one court in this circuit has held that *Brady* obligations are not modified by the fact that the information is in witness statements, and has required the government to produce such statements

well in advance of trial. *See McVeigh*, 923 F.Supp. at 1315–16. In this case, the Government at the hearing stated its position that *Brady* "trumps" the Jencks Act, a position with which I agree. Jencks Act statements that also constitute *Brady* material should thus be disclosed according to the *Brady* deadlines set forth below.

*United States v. Lujan*, 530 F. Supp. 2d 1224, 1256 (D.N.M. 2008); *see also, United States v. Jacobs*, 650 F. Supp. 2d 160, 167 (D. Conn. 2009) (observing that "[t]he Second Circuit has repeatedly emphasized that the government's *constitutional* obligations to disclose material exculpatory or impeaching evidence trump [the Jencks Act]'s constraints on the disclosure of witness statements."

At least as of 2008, the Tenth Circuit has observed that "[a]pparently it remains an open question in our circuit whether… a statement otherwise covered by the Jencks Act's requirement of production at trial is required to be produced earlier when the statement includes *Brady* material." *United States v. Griebel*, 312 F. App'x 93, 96 (10th Cir. 2008). Because *Brady* is a doctrine rooted in the constitution, it stands to reason that, as the trial court in *Lujan* concluded, it "trumps" the Jencks Act. For this reason, in conjunction with the arguments previously made about materiality and *Brady*, the post-arrest statements of these testifying witnesses should

14

produced ahead of the Jencks deadline or, at a minimum, reviewed by this Court in the light of explanations to be provided on an *ex parte* basis.

### 1[d]

Based on conversations with the government in connection with discovery matters, the following witnesses who will be called at trial have apparently provided relevant testimony to the grand jury on date[s] unknown to the defense:



For the same reasons addressed in the subsection above, testimony of these witnesses should be reviewed *in camera* by this court for exculpatory information in light of the explanation of Mr. Smith's defense theory to be provided at an *ex parte* hearing.

### 2.

The parties have also reached an impasse with respect to the identity of certain confidential sources of information. The government refused

specific defense requests in this area on the basis of citation to *Roviaro v.*

*United States*, 353 U.S. 53, 60 (1957). These specific requests were as

follows:

[a]    The contents of the "Crime Stoppers tip" received on November 8, 2023 concerning Shaive Willis (SMI_00104);

[b] The identity of the Confidential Source providing information about ███████ ████████ (SMI_002165);

[c]The identities of the "multiple sources" advising OSBN that ████████ ████████ would be travelling to California "to pick up methamphetamine" (SMI_002209);

[d] The identity of the "RCI" who says ████████ ████████ is involved in the "distribution of methamphetamine again" as of May 20, 2024 (SMI_002359);

[e] The contents of the "Crime Stoppers tip" received by the Lawton Police Department that "identified ███████ as a large-scale fentanyl trafficker" and any local follow ups (SMI_002495);

[f] The identity of the Confidential Source advising on ███████████ drug related activities in Oklahoma, debriefed to members of the DEA Oklahoma City HIDTA group (SMI_000143);

[g] The identity of the Cooperating Defendant who participated in a controlled buy from ███-███████ ███████ on February 19, 2024 (SMI_004675);

Under *Roviaro*, court-ordered disclosure of an informant's identity or contents of his communication may be proper when it is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 60–61. "Where the government opposes disclosure of the identity of an informant, a trial judge must balance the public's interest in protecting the flow of information against the individual's right to prepare his or her defense." *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990). And it has been explained that the "proper balance" when reaching such a determination "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors." *Id.* at 567.

Citing to *United States v. Fischer*, 531 F.2d 783 (5th Cir. 1976), the Tenth Circuit has

> explained how cases involving confidential informants fall into several broad categories. At one extreme are the cases where the informant is a mere tipster, and disclosure is not required. At the other extreme are cases… where the informant has played a crucial role in the alleged criminal transaction, and

17

disclosure and production of the informant are required to ensure a fair trial.

*See Moralez, supra*, 908 F.2d at 568 (cleaned up and internal citations omitted). A court making (or reviewing) any decision concerning confidential informants cannot be "left to speculate about the interests which the government may have in resisting disclosure and production in this particular case;" on the contrary, the government should be called upon to clearly "articulate any reasons for withholding disclosure of the informant." *Id*. at 568–69. Here, the government has thus far simply cited to *Rovario* without elaboration. Although it is admittedly true that "mere speculation" on the part of the defense may be insufficient to justify disclosure, it is also and equally true that the government's failure to articulate any reasons for withholding" should be insufficient to tip the balance in its favor.

The identities of the confidential sources advising on activities of ▮▮▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮, and ▮▮▮▮▮ are necessary and material to Mr. Smith's defense because their identities and the information they possess will cast a different and more nuanced light and on the alleged conspiracy that is the exclusive subject of this indictment. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are three of 16 co-defendants in

18

the alleged conspiracy, and both ████████ and potentially ████

will be testifying against Mr. Smith at trial. The specific reasons why

disclosure of the confidential informants at issue here would be necessary

can be provided to the Court on an *ex parte* basis.

In order to engage in a proper balancing test with respect to these

requests and not to find itself in the position of receiving a remand after

conviction like the trial court in *Moralez*, it is respectfully submitted that

this Court must grant Mr. Smith the opportunity to be heard as to the basis

for his contention that this information is both material and of exculpatory

value and to require the government to clearly articulate the basis for its

refusal to disclose identity. In the event the court refuses to order

disclosure, it is requested that the identity of these sources be filed under

seal at this time for appellate purposes so that a reviewing court may be

able to properly assess harmfulness.

**3.**

To date, the government has failed to specifically respond to a

number of the defense's Brady demands in connection with this trial

despite repeated requests for them to do so. Instead of engaging with the

19

list of demands and indicating their basis for refusing to produce the requested exculpatory information or evidence, the government has merely stated that "the government intends to continue to abide by its obligations under *Brady*, *Giglio*, *Jencks*, the DPPA, and the Federal Rules of Criminal Procedure in accordance with the governing scheduling order." Mr. Smith submits that this blanket response is patently insufficient in the view of the complexity of this case and the seriousness of this prosecution and the potentially dire outcomes.

Based on the non-response of the government, Mr. Smith requests an order from the court requiring production of the following evidence or an explanation as to why it cannot be produced in advance of trial:

[a] Complete records of any disciplinary or other adverse personnel action or censure of DEA agents Tim Spratt or Jeremy Epps or any other agent involved in this investigation in any capacity;

[b] Any complaints or concerns raised, either internally or from any external source, touching upon the discharge of official duties on the part of DEA agents Tim Spratt or Jeremy Epps or any other agent involved in this investigation irrespective of whether such complaints or concerns were substantiated or deemed to be founded;

[c] Any internal performance-based criteria for promotion or advancement within the Drug Enforcement Agency (DEA) or Homeland Security Investigations (HSI) that could be construed as providing incentive for agents to

make or close cases;

[d] Complete employment records reflecting the timing and nature any promotions or commendations earned by DEA agents Tim Spratt or Jeremy Epps within, or subsequent to, the timeframe of any investigation pertaining to the alleged "Smith DTO;"

[e] Any instances where the veracity of oral or written testimony offered by DEA agents Tim Spratt or Jeremy Epps has been called into question by any judicial officer or the findings of any jury;

[f] Any instances where a request made by DEA agents Tim Spratt or Jeremy Epps to issue a warrant of any kind was rejected by any local, state, or federal judicial officer for any reason;

[g] The complete file (including all notes, reports, recordings, and findings) of any internal review or investigation into the circumstances of the murder of Linderal Petties in November of 2023 examining the propriety or appropriateness of the investigatory decisions made or strategies employed by the DEA and HSI in connection with its investigation of the "Smith DTO;"

[h] A complete record of any communication of any kind within or among government agents or agencies concerning the tactical decision to allow what has been termed the "Smith DTO" to continue to operate even after many of the alleged participants and modes of operation were clearly known to law enforcement;

[i] Any reason to believe that any source of information contributing to this investigation was either less than reliable or else insufficiently reliable to support the issuance of judicial warrants that would have resulted in the immediate cessation of the "Smith DTO;"

[j] Any information provided by an individual purporting to have been involved in the "Smith DTO" that contradicts or undermines information provided by another individuals purporting to have been involved or information developed independently by law enforcement;

[k] Any information suggesting the possibility that any co-defendant or known coconspirator ever purchased, transported, or sold illegal drugs in transactions with no known connection to Mr. Smith, or ever attempted to do so at any time;

[l] Complete notes or recordings of any interview with any potential prosecution witness wherein requests for assistance or consideration of any kind were either made by, or on behalf of, the interviewee or offered by the interviewers irrespective of whether the consideration offered or requested was ultimately granted;

[m] The full scope of any formal or informal agreements or understandings entered into by any potential prosecution witness or defense attorney and any agent of the United States Government or state or local law enforcement agency in connection with this investigation; and

[n] Any compensation of any kind (whether or not characterized as reimbursement) offered or paid by the Government to any individual testifying before the grand jury in this matter; and

In the alternative to ordering production, Mr. Smith respectfully

requests a full hearing on this matter where he can explain the exculpatory

nature of these requests and where the government will be compelled to

make specific representations explaining their refusal to produce the requested material.

WHEREFORE, for these and any other reasons as may appear to the court, Mr. Smith requests orders directing the government to produce the evidence and information enumerated herein by no later than the end of July of 2026. Undersigned counsel and the government have conferred and agreed that, in view of the impending trial date in this matter, a hearing on the discovery issues raised in this motion should be set for early July so the parties may be heard and so that the court's order can be effectuated in a timely manner.

Dated:    This 18th day of June, 2026.

Respectfully Submitted,

*/s/ Josh D. Moore*
JOSH D. MOORE
GEORGIA BAR NO. 520028 (*Admitted Pro Hac Vice*)
ATTORNEY FOR MR. SMITH

*/s/ Kelyn J. Smith*
KELYN J. SMITH
ILLINOIS BAR NO. 6333376 (*Admitted Pro Hac Vice*)
ATTORNEY FOR MR. SMITH

Federal Defender Program, Inc.
Centennial Tower, Suite 1500
101 Marietta Street, NW
Atlanta, Georgia 30303

(404) 688-7530; Fax: (404) 688-0768

Josh_Moore@FD.org

Kelyn_Smith@FD.org

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was submitted to the Clerk of Court for

filing and service on all parties involved via the CM/ECF system.

/s/ Josh D. Moore

/s/ Kelyn J. Smith