**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MARIELLE TRAMANIE SMITH, et al.**<br><br>**Defendant.** | **Case No. CR-24-436-G** |

**MOTION TO DISMISS THE SUPERSEDING INDICTMENT OR SUPPRESS EVIDENCE FOR THE VIOLATION OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS**

Marielle Tramanie Smith, by and through undersigned counsel, moves for dismissal of the Superseding Indictment (Doc. No. 683) pursuant to Federal Rule of Criminal Procedure 12(b), based on the government's violation of Mr. Smith's Fifth and Fourteenth Amendment rights by depriving him of access to exculpatory evidence and the ability to present a complete defense. In the alternative, Mr. Smith moves for the suppression of the government's evidence as provided herein.

## BACKGROUND

Mr. Smith is charged with a sole drug conspiracy count in violation of 21 U.S.C. § 841(a)(1). (Doc. No. 683 at 1–4). The superseding indictment states that between September 2021 and October 16, 2024, while incarcerated in Oklahoma, Mr. Smith "used contraband cellphones to run a drug-trafficking organization (the

Smith DTO) while incarcerated within the Oklahoma Department of Corrections[.]" (*Id.* at 2). Specifically, Mr. Smith is alleged to have "used these contraband cellphones to direct the acquisition of controlled substances, including methamphetamine and fentanyl, and the subsequent distribution of those controlled substances . . . . necessarily utilize[ing] non-incarcerated coconspirators to carry out the day-to-day operations of the Smith DTO." (*Id.* at 2–3). Between September 2021 and October 16, 2024, numerous "non-incarcerated coconspirators" and "members of the Smith DTO" were arrested, interviewed by law enforcement, and had their electronic devices confiscated. (*See id.*).

## ARGUMENT

### I. The government's failure to preserve electronic data from alleged co-conspirators suffices a constitutional injury pursuant to *California v. Trombetta*

Although the Government submits that "[s]everal of these contraband cellphones were seized during the course of the investigation into the Smith DTO" from Mr. Smith (*id.* at 2), numerous cellphones and electronic devices belonging to his alleged co-conspirators were not. Even though these individuals "necessarily" had to communicate via electronic device(s), there are a host of electronic devices whose contents have selectively not been produced. For certain purported co-conspirators, the government has refrained from extracting and/or producing *any* data from their respective confiscated electronic device(s). While

problematic for a variety of reasons, (*see generally* Doc. No. 643), critical here is a different category of harmful non-disclosure: data from electronic devices the government chose not to preserve, extract, or produce that is no longer available.

The Due Process Clause of the Fourteenth Amendment requires that "defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). To present a complete defense, a defendant need be equipped with all exculpatory evidence collected by the government. *Id.*; *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Agurs*, 427 U.S. 97, 112 (1976). Law enforcement violates this due process right when it fails to preserve or collect evidence (1) whose exculpatory value is apparent and (2) is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 488–89. At minimum, the Constitution imposes a duty to preserve evidence "that might be expected to play a significant role in the suspect's defense." *Id.* (*citing Agurs*, 427 U.S. at 109–111).

Here, contents of cellular phones and other electronic devices make up the *entirety* of the evidence against Mr. Smith. As the government acknowledges, Mr. Smith has been incarcerated for the entire duration of the alleged drug conspiracy. Thus, any agreement to violate the law with alleged co-conspirators within a complex drug conspiracy—and any actions taken in furtherance of such an agreement—could only be done via electronic devices and platforms.

The complete absence of electronic data from numerous co-conspirators presents a definitive constitutional injury. Phones and electronic devices from these co-conspirators have apparent, inherent exculpatory value, as each individual device and its contents—or lack thereof—defines the scope of communications with Mr. Smith and their fellow co-conspirators. Accordingly, the communications amongst these co-conspirators and others during the duration of the drug conspiracy *cannot* be obtained without access to their respective devices.

## II. At minimum, the government's failure to preserve electronic data from alleged co-conspirators creates a definitive constitutional injury pursuant to *Arizona v. Youngblood*

Even if the Court were to find the unpreserved cell phones and electronic devices "potentially useful" instead of "apparently" so, the government's deliberate decision not to collect and preserve evidence has still denied Mr. Smith due process. A defendant is denied due process if the government acted in bad faith in failing to preserve potentially useful evidence. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). "The presence or absence of bad faith by the [government agency] for purposes of the Due Process Clause must necessarily turn on the [government agency]'s knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 57; *United States v. Bohl*, 25 F.3d 904, 911 (10th Cir. 1994).

Each co-conspirator was detained, (*see, e.g.,* Doc. Nos. 89–98, 146, 203, 224, 253, 400), had electronic devices in their possession at the time of arrest, and were interviewed regarding their connection to Mr. Smith and their alleged role in the purported drug conspiracy. Despite having knowledge that Mr. Smith's communications were solely limited to electronic means while incarcerated in Oklahoma, the government made a deliberate decision not to preserve and collect the evidence from several co-conspirators' electronic devices.

In one example, DEA TFOs Spratt and Nave returned alleged co-conspirator S.M.'s[1] cell phone—*without extracting or preserving its contents*—following a mirandized interview in May 2024 concerning the purported Smith DTO. Although S.M. was taken into custody for unrelated offenses, the entirety of the interview consisted of questioning concerning the alleged drug conspiracy and its co-conspirators, including S.M.'s own purported role of retrieving large sums of illegal drugs and drug proceeds on several occasions. During the interview, S.M. signed a release allowing the DEA to inspect S.M.'s cell phone, which S.M. alleged to include contacts and communications relevant in confirming alleged co-conspirators and their supposed relation to the Smith DTO. Notwithstanding years of investigation, where these TFOs regularly arrested and retrieved as exhibits the electronic devices of those they believed to be co-

[1] S.M. has been identified as an alleged co-conspirator who will testify for the government in this case.

conspirators, they released S.M. from custody, returned S.M.'s phone, and instructed S.M. not to mention the interview to others.

The significance of these devices is not lost on the government. (*See generally* Doc. Nos. 683 and 1). A plethora of unindicted and formerly indicted alleged co-conspirators have had their electronic devices collected and preserved by the government. Considering that the government has even preserved, extracted, and been able to produce electronic data from individuals they deem *entirely unrelated* to the purported Smith DTO, the decision not to preserve electronic data from alleged co-conspirators like S.M., after years of investigation, clearly evidences bad faith. *See Bohl*, 25 F.3d at 912 (finding due process violated where the potentially exculpatory evidence disposed of was "central to the government's case" and the government "had possession or the ability to control the disposition of [said evidence] at the time it received notice [of its] potential exculpatory value").

CONCLUSION

When these due process rights have been infringed in bad faith, dismissal of the indictment is often "the proper remedy." *Id.* at 914 (reversing convictions and remanding to the district court with instructions to dismiss the indictment); *see also United States v. Cooper*, 983 F.2d 928, 933 (9th Cir. 1993) (affirming district court's dismissal of the indictment). In the wake of a *Trombetta* or *Youngblood* violation, a court's decision to suppress evidence "or to dismiss the indictment turns on the prejudice that [will] result[] to the defendant at trial."

*Bohl*, 25 F.3d at 914; *see Trombetta*, 467 U.S. at 487 ("”[W]hen evidence has been destroyed in violation of the Constitution, the court must choose between barring further prosecution or suppressing . . . the [government]'s most probative evidence."). Standing trial with the scope of evidence limited to that of co-conspirators whose electronic devices the government did or did not *choose* to preserve, would be exceedingly prejudicial, amounting to little more than the government cherry-picking the scope of exculpatory evidence available to Mr. Smith in this case. The indictment should be dismissed. At minimum, the government's evidence should be suppressed to omit testimony from alleged co-conspirators whose potentially exculpatory evidence was not preserved.

WHEREFORE, the Court should dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b) and the Fifth and Fourteenth Amendments to the Constitution. Mr. Smith requests the opportunity to further present the factual bases for relief and provide evidence for *in camera* inspection, on an *ex parte* basis, or as otherwise contemplated in accordance with the Court's Protective Order (Doc. No. 161). *Bohl*, 25 F.3d at 909 ("The inquiry into allegations of prosecutorial bad faith presents a mixed question of fact and law in which 'the quintessential factual question of intent' predominates." (quoting *United States v. Richard*, 969 F.2d 849, 853 (10th Cir. 1992))).

Dated: This 12th day of August, 2026.

Respectfully submitted,

*/s/ Kelyn J. Smith*
Kelyn J. Smith, IL Bar No. 6333376
*Admitted Pro Hac Vice*

Josh D. Moore, GA Bar No. 520028
*Admitted Pro Hac Vice*

J. Wesley Bryant, GA Bar No. 091621
*Admitted Pro Hac Vice*

Federal Defender Program, Inc. (N.D. Ga.)
Centennial Tower, Suite 1500
101 Marietta Street, NW
Atlanta, GA 30303
Phone: (404) 688-7530
Fax: (404) 688-0768
Kelyn_Smith@FD.org
Josh_Moore@FD.org
Wes_Bryant@FD.org

Edward M. Blau, #20626
*Local Counsel*
Blau Law Firm PLLC
101 Park Ave., Suite 600
Oklahoma City, OK 73102
Phone: (405) 232-2528
Fax: (405) 232-2532
edblau@blaulawfirm.com

**Attorneys for Marielle Tramanie Smith**