IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARIELLE TRAMANIE SMITH | CRIMINAL ACTION NO.<br>5:24-CR-436-G-1 |

**DEFENDANT'S *BRADY* DEMAND FOR FULL DISCLOSURE OF DETAILS OF O.I.G. "WHISTLE-BLOWER" INVESTIGATION INTO THE TACTICS OF THE DRUG ENFORCEMENT AGENCY**

COMES NOW the defendant Marielle Smith, by and through counsel, and seeks an order from this Court requiring disclosure of the full scope, nature, and extent of an ongoing federal investigation into the Drug Enforcement Agency (DEA) purportedly focusing on tactics that allow hundreds of thousands of fentanyl pills to flow freely into our communities in order to advance more ambitious (and potentially lucrative) investigative agendas and priorities. This motion is made pursuant to Mr. Smith's constitutional rights to due process and a fair trial under the Fifth Amendment to the United States Constitution as well as his right to confront witnesses called against him under the Sixth Amendment, and particularly based upon the holdings of the United States Supreme Court

in *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150, 154 (1972) (confirming that reversal may be authorized based on "nondisclosure of evidence affecting credibility" of a material witness)

In support of this motion, counsel states as follows:

Two days ago, on August 19, the Department of Justice Inspector General announced an internal investigation "to examine DOJ's actions in investigations involving the trafficking of substances containing fentanyl, fentanyl analogues, or fentanyl-related substances as defined by 21 C.F.R. § 1308.11(h)(30)(i)." *See* Press Release attached hereto as Exhibit A and viewable at https://oig.justice.gov/news/doj-oig-announces-initiation-review-2. The articulated purpose of this investigation, at its most basic level, is to examine and evaluate situations where federal investigators (specifically agents associated with the DEA) make tactical or strategic decisions to allow transactions involving this incredibly dangerous street drug to occur when reasonable steps could clearly have been taken to prevent or interrupt them.

In such situations, the DOJ OIG intends to focus its investigation on the questions of

> whether and why any risk mitigation strategies, including interdiction, are delayed or declined; who makes and approves such decisions, including when there is internal disagreement regarding which, if any, fentanyl-related risk mitigation strategies to pursue; whether and how such decisions are documented or reported; and whether DOJ personnel conduct any after-action reviews.

*Id*. Based on information and belief, the facts and circumstances of the DEA investigation led by Task Force Officer Timothy Spratt into what has now been termed the "Smith D.T.O" are now being actively scrutinized by federal investigators pursuant to this OIG review.

The OIG's apparent interest in the investigation that forms the basis for the present indictment returned against Mr. Smith is perhaps unsurprising in that DEA agents, notably including Special Agent Jeremy Epp and Task Force Officer Timothy Spratt, were clearly in possession of what the government now contends to be reliable and actionable information establishing that Mr. Smith was (in their belief) actively coordinating very large transactions involving fentanyl from within the Oklahoma Department of Corrections as early as the spring of 2023.[1] The

[1] Although the current DEA OIG investigation is focused "primarily on

transactions at issue and attributed to Mr. Smith involved tens of thousands of fentanyl pills each. And yet despite having collected this evidence through repeated interdictions and interviews of participants, Mr. Smith was not arrested or charged federally until *nearly a year and a half later*, in October of 2024.

Under the government's theory of this case (if accepted by jurors), a substantial number of drug shipments were successfully completed in the year and a half between the time T.F.O. Spratt identified and labelled the "Smith D.T.O." and the time that Mr. Smith (who had been, of course, easily accessible in state custody for the entire duration) was finally arrested by federal authorities. These shipments would have included tens or even hundreds of thousands of fentanyl pills originating from California or Arizona that ended up in communities right here in Oklahoma. Again, according to witnesses for whom the government is now vouching, Mr. Smith was supposedly the person coordinating these shipments.

---

DOJ's actions during the last 2 years," the press release explicitly notes that the OIG intends to "consider earlier events… when necessary to understand the context of the matters under review." Id.

The troubling pattern of behavior that emerges from T.F.O. Spratt's investigation here obviously implicates many (if not all) of the very same questions for which the OIG is now actively pursuing answers: Who made the operational decision to postpone (or "delay") decisive enforcement action that could arguably have prevented the importation of hundreds of thousands of fentanyl pills into Oklahoma? Who (if anyone) approved that decision? Was there any "internal disagreement" with the strategy of allowing these shipments to "play out" in order to build a bigger case? And what kind of "after-action reviews" were conducted by DOJ personnel and what were the results or conclusions of those reviews?

Whether, and to what extent, T.F.O. Spratt will ultimately be held accountable by the OIG for his operational decisions *in this case* (and their devastating consequences) remains to be seen and is, of course, a question for another day and another forum altogether. The issue before this Court is a much narrower one: does the fact that Officer Spratt's decisions are apparently being scrutinized as part of an ongoing Department of Justice investigation have the potential to "color" his testimony at this Mr. Smith's trial? The answer is clearly yes. The precarious position that Officer Spratt

now finds himself in raises a clear self-preservation motive or "bias" that goes to the very heart of his credibility as both a fact and "expert" witness at this trial on behalf of the government.

The Supreme Court has, on many occasions, "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974). In so doing, the Court has affirmed the basic principle that "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984). Indeed, in recognition of this concept, the Tenth Circuit has reversed otherwise valid criminal convictions in situations where a defendant was "denied the opportunity to reveal to the jury the facts from which they could draw inferences about [a prosecution witnesses'] reliability." *E.g., United States v. DeSoto*, 950 F.2d 626, 630 (10th Cir. 1991) (conviction reversed on violation of defendant's "sixth amendment right of confrontation"). The prospect of Officer Spratt facing

civil, administrative, or even criminal consequences for his reckless operational decision in this case casts a cloud of uncertainty over the reliability of his entire testimony in the sense that his role as a purportedly disinterested collector of "facts" and follower of clues becomes tempered by his concern for the personal and professional consequences he could realistically face for the very decisions he made *in this case*.

Officer Spratt's status as a putative target of this high-profile Department of Justice investigation implicates concerns of bias in at least two interrelated ways. First, to the extent he is backed into a proverbial corner based on an investigation out of Washington D.C., he may have an undue and improper motive to justify himself and prove that he "got it right." The Tenth Circuit has previously affirmed that exposing "ulterior motives" on the part of a witness can be a proper and protected aspect of bias cross-examination under relevant Supreme Court precedent. *See Dalton v. Dinwiddie*, 273 F. App'x 724, 727 (10th Cir. 2008) (quoting *Davis v. Alaska*, 415 U.S. 308 (1974)). Self-justification in this context (with the cloud of a DOJ investigation hovering over the proceedings) constitutes just such an ulterior motive. The more adamant and authoritative his testimony, the

more grounds for concern. It is anticipated that Officer Spratt will very likely double-down on the stand and that his level of certainty and confidence (particularly in his own "expert" opinions and conclusions) will be prejudicially inflated by virtue of his defensiveness as to the ongoing investigation.

It is critical to note in connection with this point that whether the Court or opposing counsel find it likely that these concerns may play any role (even a subconscious one) in Officer Spratt's thinking is not the point. The point is that the jury should be entitled to know about the cloud hanging over his head when weighing the pivotal testimony he will offer at this trial. Mr. Smith has a constitutional right to make arguments about Officer Spratt's ulterior motives and bias and has an antecedent right to access the materials necessary to make those arguments – whether or not the Court (which is not ultimately the finder of fact at this trial) finds them to be overwhelmingly persuasive or not.

The second, and probably more concerning and invidious, way that the pending investigation could bear on the reliability or bias of Officer Spratt is that he now has a powerful incentive to avoid very real and

concrete consequences for the operational decisions he made running this case against Mr. Smith. In other words, Officer Spratt now has a supercharged motive to please and curry favor with the prosecution in order and gain whatever meager protection this local outpost of the Department of Justice may be able to offer him. With public outrage over the DEA's reckless and irresponsible tactics surrounding fentanyl ratcheting up and new DEA whistle-blowers appearing on a seemingly weekly basis,[2] the danger that scapegoats will be in the offing increases dramatically. It takes no stretch of imagination whatsoever to surmise that Officer Spratt, as a local task force officer, hopes not to find himself among them.[3]

---

[2] *See* AP Article attached as hereto as Exhibit D and viewable at https://apnews.com/article/fentanyl-unseized-walked-justice-department-inspector-general-ce6ec1d47307ffc9d66d63c394df36c5 (reporting that "[t]wo additional DEA whistleblowers… have come forward in recent weeks").

[3] It bears mention in this connection that earlier this summer, New Mexico Governor Lujan Grishom directed her attorney general to investigate "federal officers who let fentanyl cross into the state" in order to determine whether their actions "reflect[] a broader pattern of reckless or *unlawful* behavior." *See* Article attached hereto as Exhibit B (emphasis supplied) and viewable at https://sourcenm.com/briefs/new-mexico-gov-lujan-grisham-asks-ag-to-investigate-federal-agents-who-let-fentanyl-cross-into-nm/. Attorney General Raul Torrez, noting that "the consequences for

The Tenth Circuit has identified one aspect of bias as a "relationship between a witness and a party which might cause the witness to slant his testimony for or against the party." *United States v. Baldridge*, 559 F.3d 1126, 1135 (10th Cir. 2009). The danger that Officer Spratt's enhanced need to ingratiate himself with the Department of Justice will predictably (and impermissibly) cause him to "slant" his testimony in favor of the prosecution is simply too great to ignore or pretend away. Mr. Smith's right to explore the issues of his bias in this regard is categorically protected by the Sixth Amendment. Any abridgement of this cross-examination (including a depravation of the necessary information and materials to support it) will accordingly be subject to strict scrutiny on appeal and will result in reversal of the conviction absent proof beyond a

---

New Mexicans… were fatal," responded that he intended to "pursue the full range of available remedies," explicitly noting that could include "criminal prosecution." *See* Article attached hereto as Exhibit C and viewable at https://sourcenm.com/briefs/new-mexico-ag-opens-investigation-into-allegations-that-dea-let-fentanyl-flow-into-the-state/. These developments elsewhere raise concerns about whether T.F.O. Spratt may, in fact, have a Fifth Amendment privilege as to questions about his official actions and decisions in connection with *this case* and whether he ought to be afforded defense counsel to advise him about the potential legal consequences of testifying.

reasonable doubt that it did not contribute in any way to the verdict. *See Saiz v. Burnett*, 296 F.3d 1008, 1012 (10th Cir. 2002) ("confirm[ing] that the 'harmless beyond a reasonable doubt' standard the Supreme Court articulated in *Chapman*, 386 U.S. at 24, 87 S. Ct. 824, remains the proper standard for state courts to apply when evaluating instances of constitutional error on direct appeal")

WHEREFORE, for these and any other such reasons as may appear to the Court upon a full hearing as to this motion, Mr. Smith respectfully requests that this Court order the Department of Justice to release to the defense all documents and information relating to its O.I.G. investigation announced publicly on August 17, particularly any documents, memoranda, or reports addressing the scope of the investigation or any tips or complaints filed as to specific DEA operational tactics or decision-making.

Dated: This 19th day of August, 2026.

Respectfully Submitted,

*/s/ Josh D. Moore*
JOSH D. MOORE
GEORGIA BAR NO. 520028 (*Admitted Pro Hac Vice)*
ATTORNEY FOR MR. SMITH

*/s/ Kelyn J. Smith*
KELYN J. SMITH
ILLINOIS BAR NO. 6333376 (*Admitted Pro Hac Vice)*
ATTORNEY FOR MR. SMITH

Federal Defender Program, Inc.
Centennial Tower, Suite 1500
101 Marietta Street, NW
Atlanta, Georgia 30303
(404) 688-7530; Fax: (404) 688-0768
Josh_Moore@FD.org
Kelyn_Smith@FD.org

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was submitted to the Clerk of Court for filing and service on all parties involved via the CM/ECF system.

/s/ Josh D. Moore

/s/ Kelyn J. Smith