**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | **No. CR-24-436-G** |
| | ) | |
| **MARIELLE SMITH, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**UNITED STATES' RESPONSE TO MARIELLE SMITH'S MOTION TO DISMISS SUPERSEDING INDICTMENT**

The United States respectfully submits this response to Defendant Marielle Smith's Motion to Dismiss the Superseding Indictment or Suppress Evidence (Doc. 699). For the reasons stated herein, the motion is meritless and should be denied.

## I. Background

Mr. Smith stands charged in a one-count Superseding Indictment with a drug conspiracy in violation of 21 U.S.C. § 846.[1] (Doc. 683.) The Superseding Indictment generally outlines the manner and means of the conspiracy—namely, that Mr. Smith, despite being incarcerated, operated an extensive drug-trafficking organization (Smith DTO) using contraband cellphones from

---

[1] Mr. Smith was originally charged in a one-count Indictment for a drug conspiracy in violation of 21 U.S.C. § 846, which was returned on October 1, 2024. (Doc. 1.)

September 2021 through October 16, 2024. In general, Mr. Smith directed members of the DTO to pick up drugs in other states, transport the drugs to Oklahoma and, eventually, distribute them. After the drugs were sold, members of the Smith DTO transferred the drug proceeds to other coconspirators for further use by the organization.

Mr. Smith has filed a motion to dismiss the superseding indictment or, in the alternative, to preclude testimony from alleged coconspirators (Doc. 699). In short, Mr. Smith argues that law enforcement's decision not to seize a cellphone belonging to S.M. during an interview in May 2024 amounts to a constitutional injury. But Mr. Smith offers nothing more than idle speculation and conjecture to support his claim. As such, the motion should be denied.

## II. Argument

The Constitutional duty of the government to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 489 (1984). To satisfy this standard, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 490. But the Due Process Clause does not impose "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution."

*Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Consequently, "if the exculpatory value of the evidence is *indeterminate* and all that can be confirmed is that the evidence was 'potentially useful' for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence." *United States v. Bohl*, 25 F.3d 904, 909–10 (10th Cir. 1994) (citing *Youngblood*, 488 U.S. at 58) (emphasis added).

Mr. Smith's motion is premised on a distinct category of evidence: "data from electronic devices the government chose not to preserve, extract, or produce that is no longer available." (Doc. 699 at 3.) Aside from one example addressed below, Mr. Smith does not identify with any specificity which devices purportedly contain exculpatory information. More importantly, he fails to identify any reason, beyond pure speculation, that those devices contained any exculpatory material whatsoever. In fact, despite having access to numerous downloads of cellphones from this case, Mr. Smith fails to identify with *any* specificity the sort of exculpatory evidence that he would expect to conceivably be stored within his co-defendants' devices, nor does he provide any evidence of such information being found on any of the digital devices already produced. Having access to numerous cellphones which have been produced, surely Mr. Smith could come up with at least one example of the type of "exculpatory" material that he claims he would have found on the unextracted devices on

which he now bases this motion. His failure to do so in his motion speaks volumes.

Although unclear, it appears that his claim is premised on the theory that an *absence* of communications between him and his co-defendants is equivalent to exculpatory evidence. But that argument must be rejected. Even assuming these unseized or unsearched devices contain no *recoverable* communications between Mr. Smith and his co-defendants, that is not the functional equivalent of *exculpatory* evidence. Setting aside that records of phone calls and/or text messages can be deleted, communications may also occur on encrypted third-party platforms, such as Signal or WhatsApp, that are not recoverable, and communications may take place over multiple devices, not all of which were seized by law enforcement. But that does not mean that a particular user of a particular phone did not communicate with Mr. Smith.

It should also be noted that the cellphones seized *from Mr. Smith himself* have been produced. Although any "lack" of communications between Mr. Smith and his co-defendants is not inherently exculpatory, even assuming, *arguendo*, that it is, Mr. Smith is able to demonstrate a lack of communication between him and his co-defendants vis-à-vis *his own devices.*

As noted, Mr. Smith only offers one specific example within his motion which he alleges amounts to "bad faith" conduct by law enforcement—specifically, the decision not to seize and extract the contents from a cellphone

belonging to S.M. after an interview with S.M. in May 2024. For starters, Mr. Smith's argument assumes that as of the time of the interview, the officers were aware that S.M. and Marielle Smith would be federally indicted *and* that S.M. would eventually agree to testify against Mr. Smith at a trial occurring more than two years later. But more importantly, S.M.'s phone was never transferred to law enforcement's custody. In other words, law enforcement did not "destroy" the contents of S.M.'s cellphone, as it was never in law enforcement's possession. Rather, the officers simply elected not to seize the device at that time. *See United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994) ("[T]he Government has a duty to turn over all material exculpatory evidence *in its possession* . . . .".) (emphasis added); *United States v. Bibby*, 752 F.2d 1116, 1125 (6th Cir. 1985) ("The purpose of *Brady* and its progeny is not to require the prosecutor to search out exculpatory evidence but rather to divulge whatever exculpatory evidence he already has.").

Setting aside the fact that the phone was never in the government's possession, "there is no legal requirement that law enforcement officers utilize every available investigative method." *United States v. Cota-Meza*, 367 F.3d 1218, 1223 (10th Cir. 2004). Just as law enforcement is not required to execute search warrants at every residence associated with the Smith DTO, it is not required to seize and search every cellphone with a conceivable connection to the DTO's operation. *See United States v. Back*, CR-23-348-G (W.D. Okla.)

(Jury Instructions, Doc. 101 at 24) ("You have heard testimony as to the manner in which the government conducted its investigation in this case, including certain investigative methods or techniques that were used and certain investigative methods or techniques that were not used. In attempting to prove its case, the government is under no obligation to use all of the investigative methods that are available to it or to use any particular method. . . ."). Although Mr. Smith disagrees with law enforcement's decision not to seize the phone of S.M.—who, at that time, was not facing federal charges—this investigatory decision is not the basis upon which to dismiss the superseding indictment or otherwise suppress witness testimony.

## III. Conclusion

The remedy sought by Mr. Smith—dismissal of his case or suppression of testimony—is extraordinary. Yet he offers nothing more than speculative conjecture in support of it. Absent a specific showing from Mr. Smith that the contents within the identified electronic device(s) contain exculpatory information or that law enforcement acted in bad faith during the course of its investigation, the Court should deny Mr. Smith's motion.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

*s/ Stephen Hoch*
STEPHEN HOCH (OBA 35133)
Assistant United States Attorney
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8736 (Office)
stephen.hoch@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants of record.

*s/ Stephen Hoch*
STEPHEN HOCH
Assistant United States Attorney